IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

|                                        |     |                              |
| -------------------------------------- | --- | ---------------------------- |
| Nicholas Baehr,                        | :   |                              |
| Plaintiff                              | :   | Civil Action 2:11-cv-01076   |
|                                        | :   |                              |
| v.                                     | :   | Judge Sargus                 |
|                                        | :   |                              |
| Michael J. Astrue,                     | :   | Magistrate Judge Abel        |
| Commissioner of Social Security,       | :   |                              |
| Defendant                              | :   |                              |

**REPORT AND RECOMMENDATION**

Plaintiff Nicholas Baehr brings this action under 42 U.S.C. §§405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits and Supplemental Security Income benefits.  This matter is before the  Magistrate Judge for a report and recommendation on the parties' cross-motions for summary judgment.

**Summary of Issues.** Plaintiff alleges that he is disabled due to depression and anxiety. The administrative law judge concluded that plaintiff could perform his past relevant work as a stocker and a landscaping grounds maintenance worker.

Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- The administrative law judge failed to properly consider all medical source opinions pursuant to SSR 96-2p, 20 C.F.R. §§ 404.1527(d) and 416.927(d); and,

- The administrative law judge failed to properly assess the plaintiff's credibility in evaluating his symptoms and determining the functionally limiting effects of his impairments.

**Procedural History.**  Plaintiff Nicholas Baehr filed his application for disability insurance benefits on May 18, 2009, alleging that he became disabled on May 15, 2008, at age 25, by depression, severe anxiety, panic attacks, agoraphobia, and stunted emotional development.  (R. 116, 156.)  The application was denied initially and upon reconsideration.  Plaintiff sought a *de novo* hearing before an administrative law judge. On April 14, 2011, an administrative law judge held a hearing at which plaintiff, represented by counsel, appeared and testified.  (R. 22.)  A vocational expert also testified.  On May 27, 2011, the administrative law judge issued a decision finding that Baehr was not disabled within the meaning of the Act.  (R. 17.)  On October 31, 2011, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security.  (R. 1-3.)

**Age, Education, and Work Experience.**  Nicholas Baehr was born January 16, 1983.   (R. 116.) He completed his GED in 2001. (R. 163.)  He has worked as a crew leader, a customer service representative, a damage prevention specialist, a laborer, a maintenance worker, a package handler, and a stocker.  He last worked April 25, 2009. (R. 156-57.) His employment between 1996 and 2009 was sporadic. (R. 124 and 165.)

**Plaintiff's Testimony.** Plaintiff testified that he saw his psychiatrist, Dr, Williams, every two weeks. He was prescribed Subutex for opiate dependence, Klonopin for anxiety, and Zoloft for depression.

2

Baehr testified that he 6'1" and weighed around 200 pounds. His weight had increased over the past two years due to laying around and not doing anything. He had no motivation to do anything. Although he had a driver's license, he did not drive often. He received his GED and attended college, but he did not complete his degree. He had no income and was supported by his father. His last attempt at working was in April 2009. He only lasted a couple of days. His depression and anxiety prevented him from working.

Baehr testified that he began using opiates when he was 18. He was incarcerated for 11 months in 2004-2005. After he was released from prison, he was clean for a few months before he starting using again. He has not used heroin since 2008.

He reported that he had difficulty sleeping. During a typical day he played music, played video games, or watched television. He was a DJ and mixed records, but it required a lot of concentration and could only do it for about 20 minutes. He played an online roleplaying game with other people on their schedule. He typically played from around 8-9:00 p.m. until 1-2:00 a.m. He did not do well in public, with face-to-face interaction, but he enjoyed interacting with people on the computer.

He watched a little bit of everything on television, such as the Discovery Channel, the History Channel, TNT, and sometimes Comedy Central if his dad was around to watch with him.

He and his dad attempted to fix the car if it needed work. He also tried to exercise with his brother. He could take care of his own hygiene, although he only took

3

a shower every few days due to a lack of motivation.  He has never lived independently. Prior to living with his father, he lived with his mother.  (R. 26-42.)

**Medical Evidence of Record.**

<u>Sudhir Dubey, PsyD.</u> On July 20, 2009, Dr. Dubey performed a disability assessment at the request of Bureau of Disability Determination. For the past three years, he had been receiving psychiatric treatment from his primary care doctor. When he was 15 years old, he was treated for depression and for "acting out." He was currently prescribed Zoloft, Subutex, and Vistaril. He abused heroin for four years, but he quit three years ago. He was incarcerated for 11 months for drug possession. Baehr last worked in April 2009 doing construction, but he only lasted three days.

On mental status examination, his affect was appropriate and his emotional reactions were within normal limits. He reported that he was feeling okay and that his mood in general was okay. He denied mood swings. He denied crying or symptoms of depression. He reported no appetite or weight changes. He had difficulty falling asleep. He slept a total of eight to twelve hours on a daily basis. He denied feelings of guilt, hopelessness, or helplessness. His energy level had decreased over the past two years. He denied anhedonia. He denied suicidal or homicidal ideation.

Baehr was oriented in all four spheres. He was alert and responsive. He reported difficulty concentrating. He denied difficulty with his memory. He was able to recall six digits forward and four numbers backwards. He was able to recall three objects after a

five minute delay. Serial sevens were within normal limits. His ability to perform simple calculations was average.

Baehr reported that his daily activities included cooking, cleaning, doing laundry, and watching television. He reported socially interacting with people on a regular basis. He did not have any recreational activities or hobbies.

Dr. Dubey diagnosed depressive disorder, not otherwise specified, and hallucinogenic abuse in remission. (R. 256-62.)

Marva Dawkins, Ph.D. On August 20, 2009, Dr. Dawkins, a psychologist, reviewed the evidence of record and completed a psychiatric review technique and mental residual functional capacity assessment. She noted diagnoses of depressive disorder, not otherwise specified, and hallucinogenic abuse in remission. Dr. Dawkins opined that Baehr had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace. He had no episodes of decompensation.

With respect to understanding and memory, plaintiff was not significantly limited. With respect to sustained concentration and persistence, plaintiff was moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. With respect to social interaction, Baehr was moderately limited in his ability to get along with coworkers or

peers without distracting them or exhibiting behavioral extremes. Plaintiff had no significant limitations with respect to adaptation.  (R. 263-80.)

Robert Polite, D.O.  On December 8, 2009, Dr. Polite, a general practitioner, reported Bureau of Disability Determination that he began treating plaintiff Baehr in October 2007. (R. 282-84.) He said that Baehr experienced decreased heart rate, shortness of breath, chest discomfort, excessive sweating, feelings of worthlessness, sadness and forgetfulness. Baehr exhibited lack of motivation, decreased concentration, impaired long-term memory and periods of confusion. He was not able to concentrate or focus without becoming frustrated. He experienced difficulty breathing when he was in a large crowd. Approximately, three to four days per week, plaintiff did not shower, get out of bed or complete self-care. With increased social interaction, plaintiff suffered a loss in concentration and increased anxiety. Baehr experienced anxiety on a daily basis and required medication to control his symptoms. Stress resulted in increased anxiety. (R. 283.)

Plaintiff's anxiety has continued to worsen since the age of 15. His medications would not allow for increased anti-anxiety medications. Plaintiff tended to become overly stressed, and he could not tolerate routine stress or workplace stress. Plaintiff was diagnosed with depression, anxiety, and opiate dependence. (R. 284.)

Dr. Polite's treatment notes for October 19, 2007 state that Baehr had full affect and a euthymic mood. His memory and concentration were good. He had logical thought processes. His thought content was clear. He had good insight and judgment.

6

He was described as doing well on Suboxone and Klonopin. The diagnosis was opiate addiction. (R. 286.) Baehr continued to have unremarkable findings on mental status examination from December 2009 through September 2010. (R. 292-301, 305-33.) The diagnosis throughout was opiate dependence. On two visits, there was the additional diagnosis of anxiety (R. 288 and 331) and one time depression. (R. 315.) On October 5, 2010, plaintiff was described as doing well for the most part.  (R. 291.) On November 2, 2010, plaintiff had full affect and euthymic mood. He was described as doing well. (R. 290.) On November 30, 2010, plaintiff's mental status examination was unremarkable. He was doing well with no complaints of side effects. (R. 288.)  On December 22, 2010, plaintiff's affect was full with euthymic mood. He was described as "doing well for most part." (R. 287.) On January 25, 2011, plaintiff was described as having full affect and euthymic mood. His speech was coherent. His memory and concentration were good. (R. 286.) From February through March 2011, plaintiff continued to have full affect with euthymic mood. His was doing well and did not complain of any side effects. (R. 345-46.)

Kristen Haskins, Psy.D. On February 27, 2010, Dr. Haskins reviewed additional evidence filed on reconsideration. Dr. Haskins concluded that the clinical evidence did not support a material change to the initial decision. The initial mental residual functional capacity assessment was affirmed as written. (R. 285.)

Gary A. Williams, Ph.D., L.P.C.C. On February 8, 2011, Dr. Williams, a psychologist who worked in Dr. Polite's office, evaluated plaintiff. Plaintiff was

7

unemployed and reported a long history of sporadic unemployment due to anxiety related to people, social situations, and general fears of being judged. He adopted avoidant behaviors and isolated himself. He reported worrying and panic attacks, but these symptoms did not meet criteria for generalized anxiety disorder or panic disorder. He had no desire to improve or increase his social interaction. He had a history of a mood disorder with sadness, irritability, poor sleep, isolation, and fatigue. He had no long term plans for employment, school, or planning a family.  His anxiety appeared to be resistant to treatment, which might be indicative of a personality disorder with avoidant and antisocial traits. Dr. Wilson also indicated that malingering for personal gain should be ruled out. (R. 336-38.)

Dr. Wilson also completed a biopsychosocial evaluation. Dr. Wilson indicated that plaintiff had a degree from Columbus State in auto mechanics. Plaintiff began using marijuana at age 14. At age 16, he was selling club drugs. He began using heroin at age 18. Plaintiff reported sadness and depression. He did not have difficulty concentrating. He had problems with his sleep and his appetite. He had difficulty with his anger and his nerves. Dr. Wilson diagnosed opioid dependence; major depression disorder, recurrent, moderate; anxiety disorder, not otherwise specified with a history of panic attacks; personality disorder not otherwise specified with antisocial and avoidant traits. He assigned Baehr a Global Assessment of Functioning ("GAF") score of 65 (R. 339-43), that is he had mild symptoms. DSM-IV.

8

On March 22, 2011, plaintiff reported that he followed through on finding an exercise program. He had no problems with his medications. He had no cravings and was staying clean. He still was not motivated to work. On April 12, 2011, plaintiff's mood seemed improved. He still was not participating in an exercise program. (R. 348.)

**Administrative Law Judge's Findings.**

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2.  The claimant has not engaged in substantial gainful activity since May 15, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.  The claimant has the following severe impairments : Major Depressive Disorder; Opioid Dependence (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926.

5.  After careful consideration of the entire record , I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: He is limited to simple, routine, and repetitive tasks, with brief and superficial, coworkers, and the general public.

6.  The claimant is capable of performing past relevant work as a stocker and landscaping grounds maintenance worker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7.  The claimant has not been under a disability, as defined in the Social Security Act, from May 15, 2008, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(R. 12-17.)

**Standard of Review**.  Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'"  *Id*.  *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'"  *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.**  Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- The administrative law judge failed to properly consider all medical source opinions pursuant to SSR 96-2p, 20 C.F.R. §§ 404.1527(d) and 416.927(d).

10

Plaintiff argues that the administrative law judge failed to articulate any basis for rejecting the opinion of Dr. Polite.

- The administrative law judge failed to properly assess the plaintiff's credibility in evaluating his symptoms and determining the functionally limiting effects of his impairments. The administrative law judge failed to explain the weight given to plaintiff's testimony.

**Analysis.**

Treating Doctors' Opinions.  Plaintiff argues that the administrative law judge erred in rejecting the opinion of Dr. Polite outlined in the December 8, 2009 questionnaire. *See* 282-84.

Treating Doctor: Legal Standard.  A treating doctor's opinion[1] on the issue of disability is entitled to greater weight than that of a physician who has examined plaintiff on only one occasion or who has merely conducted a paper review of the medi-

---

[1]The Commissioner's regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 404.1527(a)(2). Treating sources often express more than one medical opinion, including "at least one diagnosis, a prognosis and an opinion about what the individual can still do." SSR 96-2p, 1996 WL 374188, at *2. When an administrative law judge fails to give a good reason for rejecting a treator's medical opinion, remand is required unless the failure does not ultimately affect the decision, *i.e.,* the error is *de minimus. Wilson,* 378 F.3d at 547. So reversible error is not committed where the treator's opinion "is patently deficient that the Commissioner could not possibly credit it;" the administrative law judge's findings credit the treator's opinion or makes findings consistent with it; or the decision meets the goal of 20 C.F.R. § 1527(d)(2) but does not technically meet all its requirements. *Id.*

cal evidence of record.  20 C.F.R. § 404.1527(d)(1).  *Hurst v. Schweiker*, 725 F.2d 53, 55 (6th Cir. 1984); *Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048, 1054 (6th Cir. 1983).  The Commissioner's regulations explain that Social Security generally gives more weight to a treating doctors' opinions because treators are usually "most able to provide a detailed, longitudinal picture" of the claimant's medical impairments. 20 C.F.R. § 404.1527(d)(2).  When the treating doctor's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record" the Commissioner "will give it controlling weight. " *Id.*

Even though a claimant's treating physician may be expected to have a greater insight into his patient's condition than a one-time examining physician or a medical adviser, Congress specifically amended the Social Security Act in 1967 to provide that to be disabling an impairment must be "medically determinable."  42 U.S.C. §423(d)(1)(A).  Consequently, a treating doctor's opinion does not bind the Commissioner when it is not supported by detailed clinical and diagnostic test evidence.   *Warner v. Commissioner of Social Security,* 375 F.3d 387, 390 (6th Cir. 2004)*; Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779-780 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1983); *Halsey v. Richardson*, 441 F.2d 1230, 1235-1236 (6th Cir. 1971); *Lafoon v.*

*Califano*, 558 F.2d 253, 254-256 (5th Cir. 1975).  20 C.F.R. §§404.1513(b), (c), (d), 404.1526(b), and 404.1527(a)(1)[2].

The Commissioner's regulations provide that she will generally "give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you."  20 C.F.R. § 404.1527(d)(1).  When a treating source's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."  20 C.F.R. § 404.1527(d)(2).  In determining the weight to assign a treating source's opinion, the Commissioner considers the length of the relationship and frequency of examination; nature and extent of the treatment relationship; how well-supported the opinion is by medical signs and laboratory findings; its consistency with the record as a whole; the treating source's specialization; the source's familiarity with the Social Security program and understanding of its evidentiary requirements; and the extent to which the source is familiar with other information in the case record relevant to decision.  *Id.*  Subject to these guidelines, the

---

[2]Section 404.157(a)(1) provides:
You can only be found disabled if you are unable to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. See §404.1505. Your impairment must result from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. See §404.1508.

Commissioner is the one responsible for determining whether a claimant is disabled.  20 C.F.R. § 404.1527(e)(1).

Social Security Ruling 96-2p provides that "[c]ontrolling weight cannot be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques."  Consequently, the decision-maker must have "an understanding of the clinical signs and laboratory findings and what they signify."  *Id.*  When the treating source's opinion "is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight . . . ."  The Commissioner's regulations further provide that the longer a doctor has treated the claimant, the greater weight the Commissioner will give his or her medical opinion.  When the doctor has treated the claimant long enough "to have obtained a longitudinal picture of your impairment, we will give the source's [opinion] more weight than we would give it if it were from a non-treating source."  20 C.F.R. §404.1527(d)(2)(I).

The Commissioner has issued a policy statement about how to assess treating sources' medical opinions.  Social Security Ruling 96-2p.  It emphasizes:

1. A case cannot be decided in reliance on a medical opinion without some reasonable support for the opinion.

2. Controlling weight may be given only in appropriate circumstances to medical opinions, *i.e.*, opinions on the issue(s) of the nature and severity of an individual's impairment(s), from treating sources.

14

3. Controlling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques.

4. Even if a treating source's medical opinion is well-supported, controlling weight may not be given to the opinion unless it also is "not inconsistent" with the other substantial evidence in the case record.

5. The judgment whether a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record requires an understanding of the clinical signs and laboratory findings and what they signify.

6. If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; *i.e.*, it must be adopted.

7. A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected.  It may still be entitled to deference and be adopted by the adjudicator.

Even when the treating source's opinion is not controlling, it may carry sufficient weight to be adopted by the Commissioner:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p.

15

The case law is consistent with the principals set out in Social Security Ruling 96-2p.  A broad conclusory statement of a treating physician that his patient is disabled is not controlling.  *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).  For the treating physician's opinion to have controlling weight it must have "sufficient data to support the diagnosis."  *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 536, 538 (6th Cir. 1981); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985).  The Commissioner may reject the treating doctor's opinions when "good reasons are identified for not accepting them."  *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988); 20 C.F.R. § 404.1527(d)(2)("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion"); *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004).  Even when the Commissioner determines not to give a treator's opinion controlling weight, the decision-maker must evaluate the treator's opinion using the factors set out in 20 C.F.R. § 404.1527(d)(2).  *Wilson,* 378 F.3d at 544; *Hensley v. Astrue,* 573 F.3d 263, 266 (6th Cir. 2009). There remains a rebuttable presumption that the treating physician's opinion "is entitled to great deference." *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242 (6th Cir. 2007); *Hensley*, above. The Commissioner makes the final decision on the ultimate issue of disability. *Warner v. Commissioner of Social Security,* 375 F.3d at 390; *Walker v. Secretary of Health & Human Services,* 980 F.2d 1066, 1070 (6th Cir. 1992); *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 855 (6th Cir. 1986); *Harris v. Heckler*, 756 F.2d at 435; *Watkins v. Schweiker*, 667 F.2d 954, 958 n.1 (11th Cir. 1982).

Treating Doctor: Discussion.  The administrative law judge summarized Dr.

Polite's treatment records as follows:

> In terms of claimant's alleged mental impairments, he was treated for
> opiate dependence from as early as October 19, 2007. (Exhibit 6F/48) He
> took Suboxone and Klonopin, and later switched to Methadone for the
> condition as of June 2008. (Exhibit 6F/40, 42, 48)

> He was still being followed for opiate dependence as late as January 2011,
> and a February 2011 evaluation concluded that he still met the DSM-VI
> criteria for opioid dependence. (Exhibit 6F/6; 7F/2) There were also
> statements in the record concerning the claimant's affective disorder, as he
> took Zoloft for the condition as early as January 2008. (Exhibit 6F/45)
> However, subsequent mental status examinations were consistently
> normal. (Exhibits 6F; 7F/8)

(R. 15.) The administrative law judge explained her rationale for adopting the opinions

of Drs. Dubey, Dawkins, and Haskins:

> As for the opinion evidence, I gave great weight to the opinions of the
> State agency psychological consultants and psychological consultative
> examiner. They were accompanied by detailed explanations, after a full
> review of the entirety of the medical evidence. Additionally, the medical
> evidence of record substantiates the agency examiner's findings, and, as
> medical consultants with the Administration, the examiners are certainly
> well versed in the assessment of functionality as it pertains to the
> disability provision of the Social Security Act, as amended.

(R. 15.)

Dr. Polite's treatment notes consistently stated that plaintiff was doing well.

There were no significant findings on mental status examination. Dr. Polite's opinion

was inconsistent with his own treatment notes and the medical evidence of record. As a

result, remand would be "an idle and useless formality." *Wilson v. Commissioner of Social

Security*, 378 F.3d 541, 547 (6th Cir. 2004) ("[I]f a treating source's opinion is so patently

deficient that the Commissioner could not possibly credit it, a failure to observe §
1527(d)(2) may not warrant reversal.").

 <u>Credibility Determinations: Controlling Law</u>. Pain is an elusive phenomena.
Ultimately, no one can say with absolute certainty whether another person's
subjectively disabling pain and other symptoms preclude all substantial gainful
employment.  The Social Security Act requires that the claimant establish that he is
disabled.  Under the Act, a "disability" is defined as "inability to engage in any
substantial gainful activity *by reason of any medically determinable or mental impairment*
which can be expected . . . to last for a continuous period of not less than 12 months.  . .
."  42 U.S.C. §423(d)(1)(A) (emphasis added).

 Under the provisions of 42 U.S.C. §423(d)(5)(A), subjective symptoms alone
cannot prove disability. There must be objective medical evidence of an impairment
that could reasonably be expected to produce disabling  pain or other symptoms :

> An individual's statement as to pain or other symptoms shall not
> alone be conclusive evidence of disability as defined in this section;
> there must be medical signs and findings, established by medically
> acceptable clinical or laboratory diagnostic techniques, which show
> the existence of a medical impairment that results from anatomical,
> physiological, or psychological abnormalities which could
> reasonably be expected to produce the pain or other symptoms
> alleged and which, when considered with all evidence required to be
> furnished under this paragraph (including statements of the
> individual or his physician as to the intensity and persistence of such
> pain or other symptoms which may reasonably be accepted as
> consistent with the medical signs and findings), would lead to a
> conclusion that the individual is under a disability.  Objective
> medical evidence of pain or other symptoms established by
> medically acceptable clinical or other laboratory techniques (for

example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.

The Commissioner's regulations provide a framework for evaluating a claimant's

symptoms consistent with the commands of the statute:

> (a) *General*.  In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  By objective medical evidence, we mean medical signs and laboratory findings as defined in §404.1528(b) and (c).  By other evidence, we mean the kinds of evidence described in §§404.1512(b)(2) through (6) and 404.1513(b)(1), (4), and (5) and (e).  These include statements or reports from you, your treating or examining physician or psychologist, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work and any other evidence showing how your impairment(s) and any related symptoms affect your ability to work.  We will consider all of your statements about your symptoms, such as pain, and any description you, your physician, your psychologist, or other persons may provide about how the symptoms affect your activities of daily living and your ability to work.  However, statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.  In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings and statements about how your symptoms affect you.  (Section 404.1527 explains how we consider opinions of your treating source and other medical opinions on the existence and severity of your symptoms, such as pain.)  We will then determine

19

> the extent to which your alleged functional limitations and
> restrictions due to pain or other symptoms can reasonably be
> accepted as consistent with the medical signs and laboratory findings
> and other evidence to decide how your symptoms affect your ability
> to work.

20 C.F.R. §404.1529(a). A claimant's symptoms will not be found to affect his ability to

work unless there is a medically determinable impairment that could reasonably be

expected to produce them. 20 C.F.R. § 404.1529(b). If so, the Commissioner then

evaluates the intensity and persistence of the claimant's pain and other symptoms and

determines the extent to which they limit his ability to work. 20 C.F.R. § 404.1529(c). In

making the determination, the Commissioner considers

> all of the available evidence, including your history, the signs and
> laboratory findings, and statements from you, your treating or nontreating
> source, or other persons about how your symptoms affect you. We also
> consider the medical opinions of your treating source and other medical
> opinions . . . .

*Id.*

In this evaluation of a claimant's symptoms, the Commissioner considers both

objective medical evidence and "any other information you may submit about your

symptoms." 20 C.F.R. § 404.1529(c)(2). The regulation further provides:

> Because symptoms, such as pain, are subjective and difficult to quantify,
> any symptom-related functional limitations and restrictions which you,
> your treating or nontreating source, or other persons report, which can
> reasonably be accepted as consistent with the objective medical evidence
> and other evidence, will be taken into account as explained in paragraph
> (c)(4) of this section in reaching a conclusion as to whether you are
> disabled. We will consider all of the evidence presented, including
> information about your prior work record, your statements about your

symptoms, evidence submitted by your treating or nontreating source, and observations by our employees and other persons. Section 404.1527 explains in detail how we consider and weigh treating source and other medical opinions about the nature and severity of your impairment(s) and any related symptoms, such as pain. Factors relevant to your symptoms, such as pain, which we will consider include:

(I) Your daily activities;

(ii) The location, duration, frequency, and intensity of your pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). When determining the extent to which a claimant's

symptoms limit his ability to work, the Commissioner considers whether the claimant's

statements about the symptoms is supported by or inconsistent with other evidence of

record:

In determining the extent to which your symptoms, such as pain, affect your capacity to perform basic work activities, we consider all of the available evidence described in paragraphs (c)(1) through (c)(3) of this section. We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and other

21

evidence, in reaching a conclusion as to whether you are disabled. We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your treating or nontreating source or other persons about how your symptoms affect you. Your symptoms, including pain, will be determined to diminish your capacity for basic work activities to the extent that your alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence.

20 C.F.R. § 404.1529(c)(4).

SSR 96-7p explains the two-step process established by the Commissioner's regulations

for evaluating a claimant's symptoms and their effects:

First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. The finding that an individual's impairment(s) could reasonably be expected to produce the individual's pain or other symptoms does not involve a determination as to the intensity, persistence, or functionally limiting effects of the individual's symptoms. . . .

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

When additional information is needed to assess the credibility of the individual's statements about symptoms and their effects, the

22

adjudicator must make every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements. In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 C.F.R. § 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:

> 1. The individual's daily activities;
>
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g. lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

<u>Case law interpreting the statute and regulations</u>. At the outset, it is important to keep in mind that symptoms are the claimant's "description of [his/her] physical or mental impairment." 20 C.F.R. § 404.1528(a). Inevitably, evaluating symptoms involves making credibility determinations about the reliability of the claimant's self-report of

his symptoms. *Smith ex rel E.S.D. v. Barnhart*, 157 Fed. Appx. 57, 62 (10th Cir. December. 5, 2005) (not published)("Credibility determinations concern statements about symptoms.")

"Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain." *Rogers v. Commissioner of Social Sec.*, 486 F.3d 234, 247 (2007); SSR 96-7p, 1996 WL 374186 (July 2, 1996). That test was first set out in *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 853 (6th Cir. 1986). First, the Court must determine "whether there is objective medical evidence of an underlying medical condition."  If so, the Court must then

> examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Duncan*, 801 F.2d at 853.  Any "credibility determinations with respect to subjective complaints of pain rest with the ALJ." *Siterlet v. Secretary of Health and Human Services*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers,* 486 F.3d at 247 (citing  *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir.1997); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir.1990); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir.1981)).  The ALJ is required to explain her credibility determination in her decision, which "'must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that

weight.'" *See id.* (quoting SSR 96-7p). Furthermore, the ALJ's decision must be support-

ed by substantial evidence. *Rogers,* 486 F.3d at 249.

<u>Discussion of ALJ's credibility determination</u>. The administrative law judge

stated:

> As for credibility, I find that the claimant's alleged symptoms are not
> consistent with the objective medical findings of record as a whole under
> SSR 96-7p. Generally, the claimant's testimony was forthright but not
> credible to the extent that he claims to be unable to perform any work, and
> because he proven to be far less restricted that he claims.

> The claimant testified that he plays role-playing computer games that can
> last as long as 6 hours at a time, which is contrary to his assertion that he
> cannot concentrate, complete tasks, or pay attention. He also interacts
> with other participants who play the computer games while online, and
> lives with his father, which is also inconsistent with his assertion that he
> does not get along with others.

(R. 16.)

The administrative law judge's credibility determination is supported by

substantial evidence. Plaintiff's allegations that he is unable to concentration or

complete tasks is contradicted by his ability to play computer games for significant

lengths of time. Additionally, plaintiff is able to interact and coordinate with other

players online, contradicting his allegations that he cannot get along with others.

From a review of the record as a whole, I conclude that there is substantial

evidence supporting the administrative law judge's decision denying benefits.

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner of Social

Security be **AFFIRMED.** It is **FURTHER RECOMMENDED** that plaintiff's motion for

summary judgment be **DENIED** and that defendant's motion for summary judgment be **GRANTED.**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

 

 s/Mark R.  Abel_____
United States Magistrate Judge